IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DANNY VARNER,

    Petitioner,

v.                                           Case No. 5:24cv266/TKW/MAL

WARDEN GABBY,
F.C.I. MARIANNA,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This case is before me on Petitioner Danny Varner's "Emergency Second Amended § 2241 Petition for Writ of Habeas Corpus." ECF No. 9. Warden Gabby has filed an answer raising the affirmative defense of failure to exhaust. For the following reasons, I recommend Varner's petition be denied on the merits without making a ruling on the exhaustion issue.

Varner is currently in custody at Fairton Federal Correctional Institution with a projected release date of March 4, 2026. *See* https://www.bop.gov/inmateloc/. He was in custody at the Federal Correctional Institution in Marianna when jurisdiction attached in this case.

In his emergency second amended petition,[1] Varner raises a single ground for relief: "Unlawful sentence/confinement-Second Chance Act/First Step Act Release." ECF No. 9. The only supporting facts he provides are as follows:

> My case manager failed to educate and inform me of options on kinds of *halfway house releases* available to me 17 to 19 months prior to my projected release date: 3/4/26, in accordance with the *Second Chance Act* or to apply my *First Step Act* Earned Time Credits, causing me to overserve my *in-custody sentence*, as a low custody/low recidivism scoring inmate. Ms. Baker should have put my halfway house in August or October at the latest. I provided the Relocation Transfer address back in May and she failed to put it in timely, causing a significant delay.

*Id.* at 3 (emphasis added).

For relief, he requests "immediate release and any other relief this Court deems necessary." *Id.* at 6. Put in context, immediate release for Varner means "halfway house release[]" from his "in-custody sentence" under the "First Step Act" and "Second Chance Act." *Id.* at 3.

---

[1] In his initial petition, Varner alleged he had not received proper treatment for his opioid use disorder which treatment would better prepare him for success upon his release from prison. ECF No. 2. The Court ordered Varner to amend his petition on the proper court form, noting that as a general matter claims challenging conditions of confinement did not sound in habeas. ECF No. 4. In his amended petition, Varner raised three claims. ECF No. 6. He renewed his request for drug treatment, he claimed that cruel and unusual conditions existed in the Special Housing Unit, and he claimed he was entitled to immediate release from custody under the First Step Act and Second Chance Act. He provided no specific facts in support of his claim other than that he had earned a year off his sentence in addition to FSA and SCA credits. The Court again directed Varner to amend by filing a second amended petition.

I.  **Exhaustion of administrative remedies**

The Warden raised the affirmative defense of failure to exhaust administrative remedies. ECF No. 18. In his reply, Varner maintains it was impossible for him to complete the administrative remedy process because he was transferred multiple times after he filed his BP-9 on January 11, 2025, and his repeated requests for a BP-10 form were ignored and denied by staff. ECF No. 21 at 2-3. The Warden has not filed anything in rebuttal.

Under the *Turner* two-step analysis, Varner's allegations must be taken as true at step one. *Turner v. Burnside*, 541 F.3d 1077, 1083 (11th Cir. 2008). Taking Varner's allegations as true, the Court is inclined to agree with Varner that his transfers and the refusal of staff to provide him with a BP-10 form made further administrative remedies unavailable to him.

At step two, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* To date, the Warden has not disputed Varner's allegations. Rather than order a supplemental response or an evidentiary hearing to resolve any disputed facts, the court will skip over the exhaustion issue because it is easier to address the merits of the petition. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (court may skip over non-jurisdictional exhaustion issue to deny a petition on the merits).

## II. Varner is not entitled to an order directing the Bureau of Prisons to immediately place him in a halfway house

Consideration of a prisoner for prerelease custody is governed in part by the Second Chance Act (SCA), which authorizes the Bureau of Prisons (BOP) to place a prisoner in a community correctional facility (also known as a Residential Reentry Center, RRC, or halfway house) or in home confinement to prepare for reentry into society prior to the expiration of the prisoner's term of custody. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251. Under the SCA, codified at 18 U.S.C. § 3624(c), a prisoner is eligible to spend up to 12 months in prerelease custody in a community correctional facility prior to the end of his sentence. 18 U.S.C. § 3624(c)(1). A prisoner is also eligible for a period of home confinement not to exceed "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

The SCA makes clear that prerelease custody determinations, like other custody determinations, are placement decisions committed to the discretion of the BOP with the following provision: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Section 3621 delegates the authority to "designate

the place of the prisoner's imprisonment" to the BOP as it "determines appropriate and suitable considering" five factors.[2]  18 U.S.C. § 3621(b).

Furthermore, the SCA directs the BOP to provide prerelease custody "*to the extent practicable*." 18 U.S.C. § 3621(c)(1) and (2) (emphasis added). These provisions make clear that the BOP retains discretion to determine where and when to place an inmate in a community correctional facility or in home confinement under the SCA, and that a prisoner has no enforceable interest in transfer to prerelease custody on his earliest date of eligibility. *See, e.g., Bromfield v. Dobbs*, No. 18-CV-22618-SCOLA, 2019 WL 404048, at *5 (S.D. Fla. Jan. 16, 2019) (noting that a 12-month placement under the SCA is not guaranteed, and it is within the discretion of the BOP whether to place a prisoner in an RRC, and if so for how long) (citing cases), *report and recommendation adopted*, No. 18-22618-CIV, 2019 WL 399899 (S.D. Fla. Jan. 31, 2019).

In accordance with the discretion granted to the BOP, a court generally does not have the authority to direct the BOP to place a prisoner in prerelease custody.

---

[2] The factors listed in 18 U.S.C. § 3621(b) are:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence… and
    (5) any pertinent policy statement issued by the Sentencing Commission

*See Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023) (court lacked the authority to order the BOP to place prisoner in home confinement); *Touizier v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (same). Furthermore, there is generally no protected liberty interest in prerelease custody. *See Sills*, at *3 (acknowledging Sills had no protected liberty interest in home confinement and thus was "not entitled to due process protections in relation to that decision.").

The First Step Act (FSA) built upon the structure in 18 U.S.C. § 3624(c) created by the SCA by adding a risk and needs assessment system whereby prisoners can earn incentives—including time credits to be applied toward placement in prerelease custody and toward early placement on supervised release—for successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4); 18 U.S.C. § 3624(g). To this end, Congress expanded the time frame for release and prerelease custody by specifically exempting FSA time credits from the "time limits" in 18 U.S.C. § 3624, subsections (b) and (c).[3]  18 U.S.C. § 3624(g)(10).

---

[3] Subsection (c) limits placement in home confinement to 6 months and limits placement in an RRC to 12 months. 18 U.S.C. § 3624(c)(1) and (2). The FSA expanded on this by directing time credits to "be applied toward time in prerelease custody" without regard to the limit. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(10). Subsection (b) limits early release from prison to no more than "54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C.

Notably, however, Congress did not exempt FSA prerelease custody from other provisions in § 3624(c), such as the explicit preservation of "the authority of the Director of the Bureau of Prisons" to make placement decisions regarding prerelease custody "under section 3621," or the qualification that prerelease custody is to be provided "to the extent practicable." 18 U.S.C. § 3624(c)(4), (c)(1) and (c)(2). Instead, the FSA reiterates the BOP's discretionary authority by expressly adding the following provision to the end of 18 U.S.C. § 3621(b): "Notwithstanding any other provision of law, the designation of a place of imprisonment under this subsection is not reviewable by any court." First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194.

As recently found by Judge Hinkle, the FSA does not limit "the Bureau's § 3621 authority." *Hutson v. Pistro*, No. 4:24cv464-RH-MAL, 2025 WL 2048360, at *1 (N.D. Fla. Jul. 21, 2025). These provisions in § 3624(c) and § 3621(b), which are applicable to prerelease custody under both the SCA and the FSA, preserve the BOP's discretion to make custody determinations involving transfer to prerelease custody. *See id.* at 3 (denying petition seeking immediate placement in prerelease custody); *Crowe, et al. v. Federal Bureau of Prisons, et al.,* No. 24-cv-3582 (APM),

---

§ 3624(b). The FSA expanded on this by authorizing an additional 12 months of time credits to be applied toward early release from prison and placement on supervised release. 18 U.S.C. § 3624(g)(3).

2025 WL 1635392, at *21-23 (D. D.C. June 9, 2025) (finding no right to immediate transfer). The BOP's decision "is not reviewable by any court." 18 U.S.C. § 3621(b).

To the extent any limited review of the BOP's individual placement decision is available, *see Sills*, 2023 WL 1775725, at *3-6, Varner has not shown that the BOP has abused its discretion with regard to his placement. The Warden's response to Varner's BP-9 shows that Varner requested to be released as homeless in districts other than his sentencing district. ECF No. 18-2 at 29; ECF No. 21 at 5. That request presents obvious problems in finding a placement that accords with the general purposes of prerelease custody, which is to "afford [a] prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). After Varner agreed to a Supervised Release Plan to release as homeless in his sentencing district, he was submitted for RRC Placement. ECF No. 18-2 at 29; ECF No. 21 at 5.

Understandably, Varner's circumstances present a challenge to the BOP in finding a suitable placement for him. Those challenges carry over to the timing of his placement. "*Whether* to transfer a prisoner necessarily depends on where the prisoner might appropriately be placed." *Crowe*, 2025 WL 1635392, at *21 (italics in original).

Varner's emergency second amended petition does not allege any facts to show that the BOP has abused its discretion in any way regarding the timing and place for his transfer to prerelease custody. Varner has provided no legal basis whatsoever for this court to order his immediate release from his current custody placement and order that he be transferred to a halfway house.

Accordingly, it is respectfully RECOMMENDED:

1. Varner's Emergency Second Amended § 2241 Habeas Petition (ECF No. 9) be DENIED.

2. The clerk be directed to close the case file.

Done on August 21, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

### NOTICE TO THE PARTIES

The case was referred to a magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.